No. 26-1104

# UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

PARENT AA, ET AL.,

*Plaintiffs-Appellees*,

v.

UNITED STATES DEPARTMENT OF JUSTICE,

*Respondent-Appellant.*

On Appeal from the United States District Court
for the District of Maryland
Case No. 1:25-cv-03780-JRR– Judge Julie Rebecca Rubin

**BRIEF OF *AMICI CURIAE***
**AMERICAN CIVIL LIBERTIES UNION FOUNDATION,**
**AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF**
**MARYLAND, AND NATIONAL CENTER FOR YOUTH**
**LAW IN SUPPORT OF PLAINTIFFS-APPELLEES AND**
**AFFIRMATION**

Deborah A. Jeon
*Counsel of Record*
Gina B. Elleby
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF MARYLAND
3600 Clipper Mill Road, Suite 200
Baltimore, MD 21211
Tel: (410) 889-8555

Alexandra R. Johnson
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
Tel: (212) 549-2500

*Counsel for Amici Curiae*
*(Additional Counsel on*
*Subsequent Page)*

Jean Strout
NATIONAL CENTER FOR YOUTH LAW
428 13th Street, Floor 5
Oakland, CA 94612
Tel: (510) 835-8098

Hannah Benton Eidsath
Nina Monfredo
NATIONAL CENTER FOR YOUTH LAW
2300 18th Street NW, P.O Box 21156
Washington, D.C. 20009
Tel: (202) 868-4781

Elizabeth O. Gill
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
425 California Street, Suite 700
San Francisco, CA 94104
Tel: (415) 343-0779

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. <u>26-01104</u>      Caption: <u>PARENT AA, et al. v.U.S. DEPARTMENT OF JUSTICE</u>

Pursuant to FRAP 26.1 and Local Rule 26.1,

<u>American Civil Liberties Union ("ACLU") Foundation</u>
(name of party/amicus)

_____

 who is _____amicus_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.      Is party/amicus a publicly held corporation or other publicly held entity?   ☐YES ☑NO

2.      Does party/amicus have any parent corporations?                                ☐YES ☑NO
        If yes, identify all parent corporations, including all generations of parent corporations:

3.      Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                                          ☐YES ☑NO
        If yes, identify all such owners:

4.      Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?     ☐YES ☑NO
If yes, identify entity and nature of interest:

5.      Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.      Does this case arise out of a bankruptcy proceeding?    ☐YES ☑NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.      Is this a criminal case in which there was an organizational victim?    ☐YES ☑NO
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/Alexandra Johnson        Date: 7/14/2026

Counsel for: ACLU Foundation

- 2 -

Print to PDF for Filing

# UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

## DISCLOSURE STATEMENT

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. 26-01104        Caption: PARENT AA, et al. v. U.S. DEPARTMENT OF JUSTICE

Pursuant to FRAP 26.1 and Local Rule 26.1,

AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF MARYLAND ("ACLU of Maryland")
(name of party/amicus)


 who is _____ amicus _____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1. Is party/amicus a publicly held corporation or other publicly held entity? ☐ YES ☑ NO

2. Does party/amicus have any parent corporations? ☐ YES ☑ NO
   If yes, identify all parent corporations, including all generations of parent corporations:

3. Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity? ☐ YES ☑ NO
   If yes, identify all such owners:

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation? ☐YES ☑NO
If yes, identify entity and nature of interest:

5. Is party a trade association? (amici curiae do not complete this question) ☐YES ☐NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding? ☐YES ☑NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7. Is this a criminal case in which there was an organizational victim? ☐YES ☑NO
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: _____ /s/ Gina B. Elleby _____ Date: _____ 7-10-2026 _____

Counsel for: _Amicus ACLU of Maryland_____

Print to PDF for Filing     Reset Form

# UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

## DISCLOSURE STATEMENT

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. <u>26-01104</u>  Caption: <u>PARENT AA, et al. v.U.S. DEPARTMENT OF JUSTICE</u>

Pursuant to FRAP 26.1 and Local Rule 26.1,

<u>National Center for Youth Law</u>
(name of party/amicus)

_____

who is _____<u>amicus</u>_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1. Is party/amicus a publicly held corporation or other publicly held entity? ☐ YES ☑ NO

2. Does party/amicus have any parent corporations? ☐ YES ☑ NO
   If yes, identify all parent corporations, including all generations of parent corporations:

3. Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity? ☐ YES ☑ NO
   If yes, identify all such owners:

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation? ☐YES ☑NO
If yes, identify entity and nature of interest:

5. Is party a trade association? (amici curiae do not complete this question) ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding? ☐YES ☑NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7. Is this a criminal case in which there was an organizational victim? ☐YES ☑NO
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/Jean Strout          Date: _____7/14/2026_____

Counsel for: National Center for Youth Law

- 2 -

[ **Print to PDF for Filing** ]

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ........................................................... i

TABLE OF CONTENTS ............................................................................. ii

TABLE OF AUTHORITIES ........................................................................ iii

STATEMENT OF INTEREST ......................................................................1

ARGUMENT ........................................................................................3

    I.    The Disconnect Between the Information Sought and DOJ's Purported Interests Supports the District Court's Order Quashing the Subpoena.................3

    II.  CNH Patients Have Constitutionally Protected Privacy Interests....................8

        A.   CNH Patients Have a Reasonable Expectation of Privacy in the Medical Records Sought by DOJ's Subpoena. ...............................................9

        B.   No Compelling Governmental Interest Outweighs CNH Patients' Privacy Interests. ......................................................................13

            1.   Disclosure Would Subject CNH Patients and Their Families to Enormous Risk of Harm. .......................................................16

            2.   DOJ Provides No Safeguards to Protect Against Unwarranted Disclosure. ........................................................................21

        C.   Patients' Constitutionally Protected Privacy Interests Have Protected Against Disclosure of Identifying Information to DOJ in the Context of Grand Jury Subpoenas.................................................................25

CONCLUSION ....................................................................................28

CERTIFICATE OF COMPLIANCE ..............................................................30

CERTIFICATE OF SERVICE ....................................................................31

# TABLE OF AUTHORITIES

**Cases**

*A.L.A. v. West Valley City*,
   26 F.3d 989 (10th Cir. 1994) ...................................................................................12

*Carpenter v. United States*,
   585 U.S. 296 (2018) ...................................................................................................1

*Coe By & Through Coe v. Blanche*,
   No. 26 Civ. 4641, 2026 WL 1815507 (S.D.N.Y. June 24, 2026) ................. 26, 27

*Coe By & Through Coe v. Blanche*,
   No. 26 Civ. 4641, 2026 WL 1951390 (S.D.N.Y. July 6, 2026).........................25

*D.T. v. Christ*,
   552 F. Supp. 3d 888 (D. Ariz. 2021) ....................................................................19

*Denius v. Dunlap*,
   209 F.3d 944 (7th Cir. 2000) ................................................................................12

*Doe by & through Tanis v. Cnty. of San Diego*,
   576 F. Supp. 3d 721 (S.D. Cal. 2021) ..................................................................17

*Doe v. Broderick*,
   225 F.3d 440 (4th Cir. 2000) ......................................................................... 11, 12

*Doe v. City of N.Y.*,
   15 F.3d 264 (2d Cir. 1994) ...................................................................................12

*Doe v. Claiborne*,
   103 F.3d 495 (6th Cir. 1996) ................................................................................17

*Doe v. Se. Pa. Transp. Auth. (SEPTA)*,
   72 F.3d 1133 (3d Cir. 1995) ........................................................................ 12, 18

*Ferguson v. City of Charleston*,
   532 U.S. 67 (2001) ................................................................................ 10, 11, 23

*Flotill Prods., Inc. v. Fed. Trade Comm'n*,
   278 F.2d 850 (9th Cir. 1960) ...................................................................................8

*In re 2025 Children's Hospital of Los Angeles Subpoena*,
   No. 2:25-cv-11183, ECF No. 25-1 (C.D. Cal. Jan. 22, 2026)..............................14

*In re Children's Nat'l Hosp.*,
   No. 1:25-CV-03780, 2026 WL 160792, (D. Md. Jan. 21, 2026)................. passim

*In re Crawford*,
   194 F.3d 954 (9th Cir. 1999) ..................................................................................18

*In re Subpoena Duces Tecum No. 25-1431-016*,
   No. 2:25-mc-00041, 2025 WL 3562151 (W.D. Wash. Sept. 3, 2025) .................6

*In re Subpoenas Duces Tecum Nos. A99-0001, A99-0002, A99-0003 and A99-0004*,
   51 F. Supp. 2d 726 (W.D. Va. 1999)....................................................................15

*In re: 2025 UPMC Subpoena*,
   No. 2:25-mc-01069, 2025 WL 3724705 (W.D. Pa. Dec. 24, 2025) ............... 7, 23

*In re: 2025 UPMC Subpoena*,
   No. 2:25-mc-01069, 2026 WL 570419 (W.D. Pa. Mar. 2, 2026) .........................7

*In re: Admin. Subpoena No. 25-1431-019*,
   800 F. Supp. 3d 229 (D. Mass. 2025)................................................................ 6, 18

iv

*In re: Admin. Subpoena 25-1431-032 to Rhode Island Hosp.*,
  C.A. No. 1:26-mc-0007, 2026 WL 1392565 (D.R.I. May 14, 2026)....................7

*In re: Admin. Subpoenas to Children's Hosps.*,
  No. 8:26-cv-01834, 2026 WL 1660098 (D. Md. June 9, 2026).........................5, 6

*In re: Dep't of Just. Admin. Subpoena No. 25-1431-030*,
  Misc. No. 25-mc-00063, 2026 WL 33398 (D. Colo. Jan. 5, 2026) .......................8

*In re: Subpoena No. 25-1431-014*,
  810 F. Supp. 3d 555 (E.D. Pa 2025).............................................. passim

*Kallstrom v. City of Columbus*,
  136 F.3d 1055 (6th Cir. 1998) ...................................................................17

*Leaders of a Beautiful Struggle v. Baltimore Police Dep't*,
  2 F.4th 330 (4th Cir. 2021) .......................................................................1

*Love v. Johnson*,
  146 F. Supp. 3d 848 (E.D. Mich. 2015) .....................................................19

*Moore v. Prevo*,
  379 F. App'x 425 (6th Cir. 2010)...............................................................12

*Nat'l Aero. & Space Admin. v. Nelson*,
  562 U.S. 134 (2011) ..................................................................................10

*Nixon v. Adm'r of Gen. Servs.*,
  433 U.S. 425 (1997) ........................................................................ 10, 11, 21

*Nw. Mem'l Hosp. v. Ashcroft*,
  362 F.3d 923 (7th Cir. 2004) ................................................................ 21, 24

*Patients of Dr. Solomon v. Bd. of Physician Quality Assur.*,
   85 F. Supp. 2d 545 (D. Md. 1999).......................................................................15

*Payne v. Taslimi*, 998 F.3d
   648 (4th Cir. 2021) ............................................................................. 12, 14

*Planned Parenthood of S. Ariz. v. Lawall*,
   307 F.3d 783 (9th Cir. 2002).......................................................................23

*Planned Parenthood v. Ashcroft*,
   No. C03-4872, 2004 WL 432222 (N.D. Cal. March 5, 2004) .............................24

*Powell v. Schriver*,
   175 F.3d 107 (2d Cir. 1999) .......................................................................19

*QueerDoc, PLLC v. U.S. Dep't of Just.*,
   807 F. Supp. 3d 1295 (W.D. Wash 2025) ............................................................6

*Ray v. Himes*,
   No. 2:18-cv-272, 2019 WL 11791719 (S.D. Ohio, Sept. 12, 2019) ....................19

*Taylor v. Best*,
   746 F.2d 220 (4th Cir. 1984) ............................................................... 11, 21

*Tucson Woman's Clinic v. Eden*,
    379 F.3d 531 (9th Cir. 2004), *abrogated on other grounds by Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215 (2022) ................................................. passim

*United States v. Bailey (In re Subpoena Duces Tecum)*,
   228 F.3d 341 (4th Cir. 2000) .......................................................... 5, 11

*United States v. DeMarinis*,
    No. SAG-25-3934, 2026 WL 1780586 (D. Md. June 18, 2026).........................1

*United States v. Doe 819, (In re Grand Jury Subpoena)*,
  829 F.2d 1291, (4th Cir. 1987) ...............................................................................8

*United States v. Doe*,
  457 F.2d 895 (2d Cir. 1972) ....................................................................................8

*United States v. Exxon Corp.*,
  628 F.2d 70 (D.C. Cir. 1980) ..................................................................................8

*United States v. Westinghouse Elec. Corp.*,
  638 F.2d 570 (3d Cir. 1980) ......................................................................... 12, 15

*Walls v. City of Petersburg*,
  895 F.2d 188 (4th Cir. 1990) ........................................................ 11, 13, 21, 23

*Watson v. Lowcountry Red Cross*,
  974 F.2d 482 (4th Cir. 1992) ................................................................................12

*Whalen v. Roe*, 429 U.S. 589 (1977).............................................................. 9, 10, 11

*Z.A. v. Blanche*,
  No. 26-cv-04998, 2026 WL 1907181 (N.D. Cal. July 2, 2026)........ 25, 26, 27, 28

## Other Authorities

Carmel Shachar & Carleen Zubrzycki, *Informational Privacy After Dobbs*,
  75 Ala. L. Rev. 1 (2023) ............................................................................ 10, 12

Carol A. Ford et al., *Influence of Physician Confidentiality Assurances on
  Adolescents' Willingness to Disclose Information and Seek Future Health Care:
  A Randomized Controlled Trial*, 278 JAMA 1029 (1997)...................................20

*Department of Justice Subpoenas Doctors and Clinics Involved in Performing Transgender Medical Procedures on Children*, Dep't Justice Off. Pub. Affs. (July 9, 2025), https://www.justice.gov/opa/pr/department-justice-subpoenas-doctors-and-clinics-involved-performing-transgender-medical [https://perma.cc/T5PJ-UAY8] ...................................................................22

Eli M. Laurie et al.,  *Principles for Health Information Technology to Support and Protect Adolescent Confidentiality: Policy Statement*, 157 Pediatrics 88 (2026)20

Jeannie S. Thrall et al., *Confidentiality and Adolescents' Use of Providers for Health Information and for Pelvic Examinations*, 154 Archives of Pediatrics & Adolescent Medicine 885 (2000) .........................................................................20

MEMORANDUM FOR SELECT COMPONENT HEADS RE PREVENTING THE MUTILATION OF AMERICAN CHILDREN, OFF. ATT'Y GEN. at 3-4 (Apr. 22, 2025), https://www.justice.gov/ag/media/1402396/dl [https://perma.cc/KUX5-AQCB] ...................................................................................................................22

*National Child Abuse Prevention Month*, 2025, White House (Apr. 3, 2025), https://www.whitehouse.gov/presidential-actions/2025/04/national-child-abuse-prevention-month-2025 [https://perma.cc/KH49-WRFU]..................................18

**Rules**

Federal Rule of Appellate Procedure Rule 29(a)(2) ....................................................1

Federal Rule of Appellate Procedure Rule 29(a)(4)(E)............................................1

**STATEMENT OF INTEREST**[1]

The American Civil Liberties Union Foundation ("ACLU") is a nationwide nonpartisan organization with more than six million members, supporters, and activists. Since its founding in 1920, the ACLU has been dedicated to the principles of liberty and equality embodied in the Constitution and our nation's civil rights laws. The ACLU of Maryland is a regional affiliate of the national ACLU. The ACLU is frequently involved in litigation regarding constitutional privacy rights. *See, e.g.*, *Carpenter v. United States*, 585 U.S. 296 (2018); *Leaders of a Beautiful Struggle v. Baltimore Police Dep't*, 2 F.4th 330 (4th Cir. 2021); *United States v. DeMarinis*, No. SAG-25-3934, 2026 WL 1780586 (D. Md. June 18, 2026).

The National Center for Youth Law ("NCYL") is a private, non-profit law firm that uses the law to help children achieve their potential by transforming the public agencies that serve them. NCYL has extensive experience litigating to enforce the rights of young people—including those who identify as lesbian, gay, bisexual, transgender, queer, and other identities across the gender and sexuality identity

---

[1] *Amici* submit this brief pursuant to Federal Rule of Appellate Procedure Rule 29(a)(2) and certify that all parties have consented to its timely filing. Pursuant to Federal Rule of Appellate Procedure Rule 29(a)(4)(E), *amici* also certify that no person or entity, other than *amici*, their members, or their counsel, made a monetary contribution to the preparation or submission of this brief or authored this brief in whole or in part.

spectrum (hereinafter LGBTQ+)—to health care, to connections to their families and

communities, and to reduce reliance on traumatic family separation.

The district court properly quashed the Department of Justice's ("DOJ") administrative subpoena to Children's National Hospital ("CNH") after concluding that "the Subpoena was not issued for a legitimate governmental purpose, is not limited in scope to any legitimate purpose, and is oppressive in its breadth." *In re Children's Nat'l Hosp.*, No. 1:25-CV-03780, 2026 WL 160792, at *8 (D. Md. Jan. 21, 2026). *Amici* submit this brief to further highlight the constitutional privacy interests implicated for transgender youth and their families who sought care at CNH. Those interests reinforce the district court's conclusion and independently warrant affirmance.

## I. The Disconnect Between the Information Sought and DOJ's Purported Interests Supports the District Court's Order Quashing the Subpoena.

DOJ's stated purpose of investigating healthcare fraud is untethered to its broad requests seeking expansive and intimate patient information, supporting the district court's finding of improper purpose.

DOJ contends that its subpoena was issued "so the Department can investigate—and, if appropriate, prosecute—federal criminal offenses that . . . may occur in connection with puberty blockers and cross-sex hormones." Corrected Br. for Appellants at 60, ECF No. 16; *see also id.* at 38-39 (alleging "[p]atient records may also be necessary to identify patients' adverse health outcomes, which are often significant in FDCA [Food, Drug, and Cosmetic Act] and other health care offenses,"

3

since they "permit[] investigators to determine the scale of potential FDCA violations, to compare records to distinguish between one-off billing errors and institutionalized practices suggesting intentional miscoding of treatments, and to generate future investigative leads such as identifying relevant records to request from health benefit programs"); *In re Children's Nat'l Hosp.*, 2026 WL 160792, at *7 n.15 (explaining subpoena was issued pursuant to DOJ's "interest in purported violations of the FDCA"). Yet, as the district court correctly held, "[n]othing the Government submits plausibly explains the purported connection between the documents it demands and suspected Hospital FDCA violations," since "it is utterly unclear to this court why the Government demands production of adolescent patient records, including patient names, dates of birth, social security numbers, parent information, clinical indications, diagnoses, and parent authorization forms." *In re Children's Nat'l Hosp.*, 2026 WL 160792, at *8; *see also id.* ("Nothing in the Government's papers provides even a bare foundation on which to issue the Subpoena requiring adolescent patient medical records . . . . Even crediting the Government's stated FDCA investigatory purpose, such a purpose is at odds with the Subpoena.").

The subpoena's extensive and invasive scope in relation to its purpose—demanding vast amounts of highly sensitive medical information with *no connection to FDCA enforcement*[2]—confirms the district court's finding of improper purpose.

Indeed, in seven other cases, courts evaluating nearly identical subpoenas have likewise found that their overbreadth evinces improper purpose:

- In a case distinct from the one below here, the District of Maryland again quashed DOJ's subpoena to Children's National Hospital, largely because "[n]othing in the Government's papers provides even a bare foundation on which to issue the CNH Subpoena requiring adolescent patient medical records." *In re: Admin. Subpoenas to Children's Hosps.*, No. 8:26-cv-01834, 2026 WL 1660098, at *13 (D. Md. June 9, 2026); *see also id.* at *14 ("[T]he CNH Subpoena was not issued for a legitimate governmental purpose, is not limited in scope to any legitimate purpose, and is oppressive in its breadth."). The court stressed that "[if] the Government is pursuing FDCA violations, it is utterly unclear . . . why the Government demands production of adolescent patient records, including patient names, dates of birth, social security numbers, parent information, clinical indications, diagnoses, and parent authorization forms." *Id.* It further held that plaintiffs "have a constitutionally reasonable expectation of privacy in the highly sensitive medical records

---

[2] The lack of connection between the information sought by Requests 11, 12, and 13 and the alleged purpose of the subpoena is what distinguishes this case from *United States v. Bailey (In re Subpoena Duces Tecum),* 228 F.3d 341 (4th Cir. 2000). There, the plaintiff argued that the sheer volume of the documents requested itself proved the subpoena's overbreadth, which the court rejected. *Id.* at 350 ("While the scope of a subpoena, if not relevant to a legitimate investigation, and overly broad and oppressive, can support a claim of unconstitutionality . . . , [t]he question of the permissible scope is generally variable in relation to the nature, purposes and scope of the inquiry.") (internal quotation marks omitted)). Here, the issue is not the volume of the subpoena's requests on their own, but rather the lack of connection of these three requests to the alleged purpose of the subpoena. Moreover, the plaintiff in *In re Subpoena Duces Tecum* specifically rejected the government's offer for him to retain "patient files"—but DOJ has made CNH no such offer here. *Id* at 350-51.

subject to the CNH Subpoena," which "outweighs any interest of the Government in calling for their production." *Id.*

- The Western District of Washington found DOJ's subpoena to Seattle Children's Hospital was issued for an improper purpose in large part because of "significant evidence that the DOJ issued the subpoena to pressure hospitals into ending gender-related care for minors." *In re Subpoena Duces Tecum No. 25-1431-016*, No. 2:25-mc-00041, 2025 WL 3562151, at *11 (W.D. Wash. Sept. 3, 2025). The court also observed that "DOJ's threadbare justification for its subpoena" combined with this "strong evidence" of "improper purpose" meant that "private interests must prevail in this case." *Id.* at *13.

- The Western District of Washington also quashed DOJ's subpoena to QueerDoc, PLLC, finding it was issued for an improper purpose largely due to the "breadth of the subpoena," which "demand[ed] a staggering amount of personal health data related to QueerDoc's patients, including their names, dates of birth, social security number, address, medical diagnoses, and patient intake documents." *QueerDoc, PLLC v. U.S. Dep't of Just.*, 807 F. Supp. 3d 1295, 1304 (W.D. Wash 2025). As "[t]hese requests have little to do with investigating violations of FDCA or FCA," the court concluded that "the subpoena serves to pressure providers to cease offering gender-affirming care rather than to investigate specific unlawful conduct." *Id.*

- The District of Massachusetts found DOJ's subpoena to Boston Children's Hospital to be "astonishingly broad" and "virtually unlimited in scope" largely because it "seek[s] all medical records and personal information of patients who have been provided with GAC [gender-affirming care], . . . despite the tenuous link these medical records (or their personal information) would have to potential fraudulent billing codes and unlawful off-label promotion." *In re: Admin. Subpoena No. 25-1431-019*, 800 F. Supp. 3d 229, 238 (D. Mass. 2025); *see also id.* at 239 (quashing subpoena in full because "the subpoena was issued for an improper purpose, motivated only by bad faith.").

- The Eastern District of Pennsylvania found it impossible to "discern" how "child-patients' identities and highly sensitive medical information" were "*relevant* to an inquiry into a 'federal health care offense'" with respect to DOJ's subpoena to Children's Hospital of Philadelphia. *In re: Subpoena No. 25-1431-014*, 810 F. Supp. 3d 555, 578 (E.D. Pa 2025); *see also id.* at 579-80 ("[T]he connection between child-patient-identifying information and

6

potential fraudulent billing codes or unlawful off-label promotion is tenuous at best and cannot shoulder the weight of compelled disclosure of a child's medical files.").

- The Western District of Pennsylvania quashed DOJ's subpoena to UPMC, explaining that it "joins the others in finding that the government's demand for deeply private and personal patient information carries more than a whiff of ill-intent." *In re: 2025 UPMC Subpoena*, No. 2:25-mc-01069, 2025 WL 3724705, at \*2 (W.D. Pa. Dec. 24, 2025); *accord In re: 2025 UPMC Subpoena*, No. 2:25-mc-01069, 2026 WL 570419, at \*1 (W.D. Pa. Mar. 2, 2026) (refusing DOJ suggestion to produce anonymized records because "true and effective anonymization cannot be achieved," and DOJ's assurances that it can be "trust[ed]" with such "sensitive and confidential information" are "cold comfort") (internal citation omitted)); *see also id.* at \*2 ("Left to its devices, the DOJ would trample states-rights to amass deeply personal information - regarding *minor children* - in service of its crusade to eliminate medical care that, until recently, was in its own eyes legal. . . . [DOJ's] rhetoric regarding gender-affirming care reflects callous indifference, if not abject cruelty. There is more than a 'whiff' of ill-intent. Arguably, it is closer to a stench.") (internal citation omitted).

- The District of Rhode Island quashed DOJ's subpoena to Rhode Island Hospital due to both its improper purpose and its violation of the "Fourteenth Amendment right to informational privacy," since "DOJ's request for intimate medical details from one of this country's most vulnerable populations constitutes a drastic overreach of its investigative authority." *In re: Admin. Subpoena 25-1431-032 to Rhode Island Hosp.*, C.A. No. 1:26-mc-0007, 2026 WL 1392565, at \*10 (D.R.I. May 14, 2026) ("The relief this Court grants therefore necessarily extends to the records of all minors.").

Similarly, a Colorado federal magistrate judge issued a report and recommendation that a "facially overbroad" DOJ subpoena be quashed because it "create[d] a dragnet designed to sweep in all patient data related to any prescription of puberty blockers or hormone therapy," instead of "limiting its request for patient data to some criteria relevant to an ostensible investigation into misbranded labeling . . . ." *In re: Dep't*

*of Just. Admin. Subpoena No. 25-1431-030*, Misc. No. 25-mc-00063, 2026 WL 33398, at \*4 (D. Colo. Jan. 5, 2026); *see also id.* (holding "the Subpoena never attempts to satisfy its burden as to limited scope" and the subpoena's requests "which seek personal health data . . . are not, therefore, relevant in purpose to an FDCA investigation").

DOJ makes no attempt to cabin the information it seeks in this subpoena to its purported intended investigations. Instead, the subpoena demands profoundly sensitive patient information with no nexus to alleged FDCA violations. This disconnect confirms improper purpose and warrants affirmance of the district court's order.

## II. CNH Patients Have Constitutionally Protected Privacy Interests.

A subpoena "remains at all times under the control and supervision of a court." *United States v. Doe 819, (In re Grand Jury Subpoena)*, 829 F.2d 1291, 1297 (4th Cir. 1987) (quoting *United States v. Doe*, 457 F.2d 895, 898 (2d Cir. 1972)). "Since the enforcement of a subpoena is an independent judicial action . . . a court is free to change the terms of an agency subpoena as it sees fit." *United States v. Exxon Corp.*, 628 F.2d 70, 77 (D.C. Cir. 1980) (citing *Flotill Prods., Inc. v. Fed. Trade Comm'n*, 278 F.2d 850, 852 (9th Cir. 1960)). That supervisory authority is critical where, as here, compelled disclosure threatens core constitutional privacy interests.

**A. CNH Patients Have a Reasonable Expectation of Privacy in the Medical Records Sought by DOJ's Subpoena.**

DOJ's subpoena directly implicates CNH patients' constitutional privacy interests by seeking identifying and exceptionally sensitive medical information. Requests 11, 12, 13, and 15 (the "Patient Data Requests") demand expansive, identifying, and sensitive patient information: names, dates of birth, social security numbers, addresses, and parent/guardian information for CNH patients and their families, all documents concerning their diagnoses, and all documents relating to informed consent. *See* Subpoena Duces Tecum No. 25-1431-019 at 6-7, ECF 1-3 (subpoena issued to CNH).

As the U.S. Supreme Court and this Court have recognized for decades, patients have constitutional privacy interests in the types of highly sensitive personal information sought by the subpoena. These interests are rooted in both substantive due process and the Fourth Amendment. In *Whalen v. Roe*, 429 U.S. 589, 599-600 (1977), for instance, the Supreme Court found patients' informational privacy interests were implicated by a state law requiring doctors to report to the state health department the names, addresses, physicians, pharmacies, and dosages of patients receiving certain prescription drugs. 429 U.S. at 591, 600. The Court distinguished between "two different kinds of interests" in privacy cases: "the individual interest in avoiding disclosure of personal matters," and "the interest in independence in making certain kinds of important decisions." *Id.* at 599-600. Informational privacy

is the former. *See also id.* at 599 n.25 (collecting cases demonstrating longstanding recognition of this interest).

The Supreme Court has affirmed the constitutional interest in informational privacy several times since *Whalen*. In *Nixon v. Adm'r of Gen. Servs.*, the Court explained that the right to privacy includes an "'individual interest in avoiding disclosure of personal matters.'" 433 U.S. 425, 457 (1977) (quoting *Whalen*, 429 U.S. at 599). Similarly, in *Nat'l Aero. & Space Admin. v. Nelson*, the Court explained that it has "referred broadly to a constitutional privacy 'interest in avoiding disclosure of personal matters.'" 562 U.S. 134, 138 (2011) (citing *Whalen*, 429 U.S. at 599, and *Nixon,* 433 U.S. at 457); *see also generally* Carmel Shachar & Carleen Zubrzycki, *Informational Privacy After Dobbs*, 75 Ala. L. Rev. 1, 19 (2023) (observing *Whalen*, *Nixon*, and *Nelson* "form the seeds from which many lower court cases confirm a right to informational privacy, often in the context of medical records" and collecting cases).

The Supreme Court has also grounded the right to informational privacy in the Fourth Amendment. For instance, in *Ferguson v. City of Charleston*, the Court held that state agents obtaining medical information with neither a warrant nor patient consent violated the Fourth Amendment. 532 U.S. 67, 76-77 (2001). The Court recognized a patient's reasonable expectation of privacy in their medical tests and warned that "intru[ding] on that expectation . . . may deter

patients from receiving needed medical care." *Id.* at 78 & n.14 (citing *Whalen*, 429 U.S. at 599-600); *see also Nixon*, 433 U.S. at 457-59 (relying on *Whalen* but also citing Fourth Amendment cases to explain the Constitution protects informational privacy).

The Fourth Circuit has also long recognized the constitutional right to informational privacy. *See, e.g.*, *Taylor v. Best*, 746 F.2d 220, 225 (4th Cir. 1984) ("The right to privacy includes an 'individual interest in avoiding disclosure of personal matters.'") (quoting *Whalen*, 429 U.S. at 599) (internal citation omitted)); *Walls v. City of Petersburg*, 895 F.2d 188, 192 (4th Cir. 1990) (same); *Doe v. Broderick*, 225 F.3d 440, 450-51 (4th Cir. 2000) (finding patient had reasonable expectation of privacy in medical records under Fourth Amendment); *In re Subpoena Duces Tecum*, 228 F.3d at 347 (assessing informational privacy interests under Fourth Amendment).

The *Walls* court adopted a two-step inquiry: first, examining "whether it is within an individual's reasonable expectations of confidentiality." *Walls*, 895 F.2d at 192; *see also id.* ("Personal, private information in which an individual has a reasonable expectation of confidentiality is protected by one's constitutional right to privacy."). Second, "[i]f the information is protected by a person's right to privacy, then the defendant has the burden to prove that a compelling governmental interest in disclosure outweighs the individual's privacy interest." *Id.* In other words, the

government must satisfy the demanding test of strict scrutiny. The Fourth Circuit has repeatedly and recently affirmed the *Walls* approach. *See, e.g.*, *Payne v. Taslimi*, 998 F.3d 648, 657 (4th Cir. 2021) ("[W]e follow *Walls*.").

Under both the substantive due process and Fourth Amendment line of reasoning, the medical records sought by DOJ here—which include mental health and medical needs assessments for vulnerable young people—implicate these privacy interests. "The reason for this is apparent: medical treatment records contain intimate and private details that people do not wish to have disclosed, expect will remain private, and, as a result, believe are entitled to some measure of protection from unfettered access by government officials." *Broderick*, 225 F.3d at 451; *see also Watson v. Lowcountry Red Cross*, 974 F.2d 482, 487 (4th Cir. 1992) (observing there is "a slew of cases [supporting] the proposition that there is a protectable right to privacy in one's medical records"). Nearly all of this Court's sister circuits agree.[3] *See* Shachar & Zubrzycki, *supra*, at 28 (noting informational privacy right is particularly protective "in contexts that implicate information including medical or

---

[3] *See Doe v. City of N.Y.*, 15 F.3d 264, 267 (2d Cir. 1994); *United States v. Westinghouse Elec. Corp.*, 638 F.2d 570, 577 (3d Cir. 1980); *Doe v. Se. Pa. Transp. Auth. (SEPTA)*, 72 F.3d 1133, 1137 (3d Cir. 1995); *Moore v. Prevo*, 379 F. App'x 425, 427 (6th Cir. 2010); *Denius v. Dunlap*, 209 F.3d 944, 956 (7th Cir. 2000); *Tucson Woman's Clinic v. Eden*, 379 F.3d 531, 551 (9th Cir. 2004), *abrogated on other grounds by Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215 (2022); *A.L.A. v. West Valley City*, 26 F.3d 989, 990 (10th Cir. 1994).

sexual information or that have implications for personal safety" and collecting cases).

DOJ's subpoena targets patient information about sex, gender transition, and the most intimate aspects of these patients' lives. These records are precisely the type of information that is shielded by constitutional informational privacy rights. *See In re Children's Nat'l Hosp.*, 2026 WL 160792, at *8 ("There can be no question that [patients] have a constitutionally reasonable expectation of privacy in the highly sensitive medical records subject to the Subpoena."). Appellees thus satisfy the first step of the *Walls* test.

### B. No Compelling Governmental Interest Outweighs CNH Patients' Privacy Interests.

In the second step of the *Walls* inquiry, DOJ bears "the burden to prove that a compelling governmental interest in disclosure outweighs the individual's privacy interest." *Walls*, 895 F.2d at 192. But, as the district court correctly concluded, "[n]o proper (never mind compelling) governmental purpose has been demonstrated," and CNH patients' "interest in maintaining the privacy of their sensitive medical records outweighs any interest of the Government in calling for their production."

*In re Children's Nat'l Hosp.*, 2026 WL 160792 at *8 (citing *Payne*, 998 F.3d 648).[4]

DOJ's purported need for this information—namely, to investigate potential violations of the FDCA in ostensible service of health and safety, *see* Corrected Br. for Appellant at 57, ECF No. 16 (alleging gender-affirming medical care for minors is "untested, unsafe, unnecessary, and unethical")—bears no relationship to the identifying information sought by the Patient Data Requests. *See supra* Part I; *see also In re: Subpoena No. 25-1431-014*, 810 F. Supp. 3d at 604 (concluding none of DOJ's "areas of inquiry inherently requires access to children's and their families' identities, psychosocial histories, sexual-development disclosures, family dynamics, trauma histories, or other intimate clinical details sought in" these requests); *Tucson Woman's Clinic v. Eden*, 379 F.3d 531, 552 (9th Cir. 2004) ("Weighing even further against the medical record access is the fact that there is little, if any, need for much of this information, such as the names and addresses of patients.").

Moreover, the privacy interest at stake here is significant. In balancing the government's interest in obtaining or disclosing information and a person's interest in maintaining its confidentiality, courts consider various factors, including the degree of need for access; the type of record requested and the nature of the

---

[4] Indeed, DOJ recently withdrew these same Patient Data Requests in order to resolve litigation involving the Children's Hospital of Los Angeles. *In re 2025 Children's Hospital of Los Angeles Subpoena*, No. 2:25-cv-11183 at 2, ECF No. 25-1 (C.D. Cal. Jan. 22, 2026) ("On December 8, 2025, the Government . . . withdrew Subpoena Requests 11, 12, and 13 in their entirety.").

information it contains; the potential for harm in any subsequent nonconsensual disclosure; the adequacy of safeguards to prevent unauthorized disclosure; and whether there is an express statutory mandate, articulated public policy, or other recognizable public interest militating toward access. *See United States v. Westinghouse Elec. Corp.*, 638 F.2d 570, 578 (3d Cir. 1980); *Tucson Woman's Clinic*, 379 F.3d at 551 (addressing similar factors).[5]

Each factor weighs strongly in favor of protecting the identities of transgender adolescent patients and their sensitive health information from DOJ. As discussed above, DOJ's degree of need for this identifying information is nonexistent, and no statutory mandate, public policy, or public interest militates towards access given the dearth of a relationship between the information sought and the federal health care offenses DOJ purports to prosecute. Moreover, the type of information sought by the subpoena—including and especially by the Patient Data Requests—is inherently sensitive and personal, which merits protection against disclosure. *See supra* Section II.A; *see also In re: Subpoena 25-1431-014*, 810 F. Supp. 3d at 598 (applying analogous *Westinghouse* factor to equivalent requests and concluding the

---

[5] Courts within the Fourth Circuit often apply these tests when assessing privacy challenges to subpoenas. *See, e.g.*, *In re Subpoenas Duces Tecum Nos. A99-0001, A99-0002, A99-0003 and A99-0004*, 51 F. Supp. 2d 726, 738 (W.D. Va. 1999) (applying *Westinghouse* factors with respect to § 3486 subpoena); *Patients of Dr. Solomon v. Bd. of Physician Quality Assur.*, 85 F. Supp. 2d 545, 547 (D. Md. 1999) (same for subpoena duces tecum).

"level of detail [sought] places the information among the most personal and sensitive a medical provider can hold and squarely within the class of intimate material . . . warranting the strongest constitutional protection"); *Tucson Woman's Clinic*, 397 F.3d at 552 (quashing in part because "[t]he type of information . . . is extremely broad, and includes patient identifying information such as names and full medical histories").

The remaining factors are discussed in turn.

### 1. Disclosure Would Subject CNH Patients and Their Families to Enormous Risk of Harm.

Forced disclosure of transgender healthcare medical records would place CNH patients and their families at enormous risk of harm. *See, e.g.*, *In re: Subpoena No. 25-1431-014*, 810 F. Supp. 3d at 599 (applying analogous factor to equivalent requests and concluding "[s]uch disclosures would strip patients of control over their most personal information, expose intimate details about their bodies and lives, and risk public outing and lasting stigma," which "would inflict deep emotional harm, destroy trust in medical care, and spread the damage to families, peers, and many others"); *Tucson Woman's Clinic*, 379 F.3d at 552-53 (holding "potential for harm" is "obviously tremendous" when disclosure involves sensitive medical records).

Courts generally agree that "where the release of private information places an individual at substantial risk of serious bodily harm, . . . the 'magnitude of the liberty deprivation . . . strips the very essence of personhood.'" *Kallstrom v. City of*

*Columbus*, 136 F.3d 1055, 1063 (6th Cir. 1998) (quoting *Doe v. Claiborne*, 103 F.3d 495, 506-07 (6th Cir. 1996)). This risk attaches to the sensitive identifying information sought by the Patient Data Requests, even if revealed only to government officials, and to any subsequent non-consensual disclosures. As discussed briefly below, this risk is further evidenced by the stigma associated with transgender healthcare, the discrimination faced by transgender people from both this administration and the public, and the importance of goodwill between patients and their doctors.

First, this risk attaches generally to the identifying information demanded by the Patient Data Requests, which would subject the revealed patients and their families to substantial risk of harassment and humiliation if made public. This risk of harm is especially high with respect to adolescents. *See, e.g.*, *Doe by & through Tanis v. Cnty. of San Diego*, 576 F. Supp. 3d 721, 736 (S.D. Cal. 2021) ("[T]he potential for harm in the non-consensual disclosure of the minor victim's personal information—including legal name, home address, school address, and cell phone number—is obviously very high.").

Importantly, this risk remains significant even if the identities of CNH patients and families are revealed only to federal government officials. The current administration has made clear it considers parents' informed consent to transgender healthcare for their children to be child abuse. *See National Child Abuse Prevention*

*Month*, 2025, White House (Apr. 3, 2025), https://www.whitehouse.gov/presidential-actions/2025/04/national-child-abuse-prevention-month-2025 [https://perma.cc/KH49-WRFU]; *see also generally In re Children's Nat'l Hosp.*, 2026 WL 160792, at *8 ("[T]he Subpoena is a pretext to fulfill the Executive's well-publicized policy objective to terminate and block gender affirming healthcare."); *In re: Administrative Subpoena No. 25-1431-019*, 800 F. Supp. 3d at 239 ("The Administration has been explicit about its disapproval of the transgender community and its aim to end GAC [gender-affirming care]. The subpoena reflects those goals, comprising overbroad requests for documents and information seemingly unrelated to investigating fraud or unlawful off-label promotion.").

Second, the stigma attached to gender dysphoria and gender-affirming healthcare in general make the risk of harassment upon disclosure extraordinarily high. The potential for harm upon non-consensual disclosure is high for medical records generally, but even higher for medical records regarding stigmatized conditions such as gender dysphoria. *Cf., e.g., In re Crawford*, 194 F.3d 954, 960 (9th Cir. 1999) (distinguishing SSN disclosure from forced "disclos[ure of] HIV status [or] sexual orientation" because "[u]nlike these personal facts, a SSN is not inherently sensitive or intimate information, and its disclosure does not lead directly to injury, embarrassment or stigma"); *SEPTA*, 72 F.3d at 1140 (given the "social

stigma, harassment, and discrimination that can result from public knowledge of one's affliction with AIDS," "there still exists a risk of much harm from non-consensual dissemination of the information that an individual is inflicted with AIDS").

Third, the fact that CNH patients' transgender identity would be revealed upon non-consensual public disclosure of the sought information triggers a high risk of harm. The Second Circuit in *Powell* emphasized that one's transgender identity "is likely to provoke . . . hostility and intolerance from others." *Powell v. Schriver*, 175 F.3d 107, 111 (2d Cir. 1999). If CNH patients' transgender status is disclosed, they too are likely to face discrimination, harassment, and violence as a result. *See, e.g.*, *Ray v. Himes*, No. 2:18-cv-272, 2019 WL 11791719, at *7 (S.D. Ohio, Sept. 12, 2019) (crediting Plaintiffs' allegations that "forced disclosure of Plaintiffs' transgender status" to government "place[s] their 'personal safety and bodily integrity in jeopardy'") (internal citation omitted)); *Love v. Johnson*, 146 F. Supp. 3d 848, 855 (E.D. Mich. 2015) (because plaintiffs' transgender identities would be revealed by inaccurate identity documents, policy at issue "poses a real threat to their 'personal security and bodily integrity'"). This harm is especially concerning when adolescents are involved. *See D.T. v. Christ*, 552 F. Supp. 3d 888, 897 n.8 (D. Ariz. 2021) ("involuntary exposure of a child's transgender status . . . unnecessarily

exposes this child to stigma, bullying, fear, and violence," and "other courts have recognized the harsh realities often facing transgender children" (collecting cases)).

Finally, producing this information would harm the doctor-patient relationship. As the district court recognized here, if patients cannot trust their providers to maintain confidentiality, they will be deterred from seeking necessary care or from being candid during treatment, which further counsels against disclosure. *See In re: Subpoena No. 25-1431-014*, 810 F. Supp. 3d at 601 ("Patients and families who believe their medical records can be turned over to federal investigators will understandably hesitate to seek care, withhold critical information from their doctors, or avoid treatment for gender-affirming concerns (given the present attacks on this care by the highest levels of law enforcement)."). This concern is heightened for youth patients, whose perception of the confidentiality of medical care is closely connected to their willingness to seek medical care at all.[6]

This risk only increases with respect to stigmatized conditions or treatments, where trust between patients and providers is of paramount importance. *See, e.g.*,

---

[6] *See, e.g.*, Eli M. Laurie et al., *Principles for Health Information Technology to Support and Protect Adolescent Confidentiality: Policy Statement*, 157 Pediatrics 88 (2026) (confidentiality of medical care fosters trust between youth and their doctor, without which youth may forgo vital medical care); Carol A. Ford et al., *Influence of Physician Confidentiality Assurances on Adolescents' Willingness to Disclose Information and Seek Future Health Care: A Randomized Controlled Trial*, 278 JAMA 1029 (1997); Jeannie S. Thrall et al., *Confidentiality and Adolescents' Use of Providers for Health Information and for Pelvic Examinations*, 154 Archives of Pediatrics & Adolescent Medicine 885 (2000).

*Nw. Mem'l Hosp. v. Ashcroft*, 362 F.3d 923, 929 (7th Cir. 2004) (cautioning that hospital "will lose the confidence of its patients, and persons with sensitive medical conditions may be inclined to turn elsewhere for medical treatment" if it fails to "shield the medical records of its abortion patients from disclosure").

For these reasons, the potential for harm to CNH patients from subsequent, non-consensual disclosures is exceedingly high.

### 2. DOJ Provides No Safeguards to Protect Against Unwarranted Disclosure.

DOJ has failed to identify any—let alone sufficient—safeguards to prevent unauthorized dissemination of the sought information, which this Court emphasizes in evaluating the government's burden in the second step of the *Walls* inquiry. *See Walls*, 895 F.2d at 194 ("One other consideration in weighing the competing interests of the government and the individual is the possibility of unauthorized disclosure of information entitled to privacy protection.") (citing *Westinghouse*, 638 F.2d at 578, *Nixon*, 433 U.S. at 458, and *Taylor*, 746 F.2d at 225). The absence of protections against unwarranted disclosure counsels further in favor of quash. *See In re: Subpoena No. 25-1431-014*, 810 F. Supp. 3d at 603 (applying analogous *Westinghouse* factor to equivalent requests and concluding that DOJ "offers nothing to mitigate a concern for these children and their families given these pronouncements"); *cf. Tucson Woman's Clinic*, 379 F.3d at 552 (holding "safeguards to prevent unauthorized disclosure to members of the public are

21

inadequate" where no "criminal or civil penalties" attached to disclosure of "specific, identifiable patient information," evidence of confidentiality training was "vague," and "there are no safeguards at all against release of information to government employees who have no need for the information").

DOJ has indicated it could share this information widely with federal and state authorities to facilitate criminal law enforcement against providers like CNH. *See, e.g.*, MEMORANDUM FOR SELECT COMPONENT HEADS RE PREVENTING THE MUTILATION OF AMERICAN CHILDREN, OFF. ATT'Y GEN. at 3-4 (Apr. 22, 2025), https://www.justice.gov/ag/media/1402396/dl [https://perma.cc/KUX5-AQCB] (directing all U.S. Attorneys to investigate and prosecute all suspected providers of "gender-affirming care," directing other components of DOJ to investigate FCA and FDCA claims based on same, and announcing partnership with state attorneys general to support state-level prosecution of these providers); *Department of Justice Subpoenas Doctors and Clinics Involved in Performing Transgender Medical Procedures on Children*, Dep't Justice Off. Pub. Affs. (July 9, 2025), https://www.justice.gov/opa/pr/department-justice-subpoenas-doctors-and-clinics-involved-performing-transgender-medical [https://perma.cc/T5PJ-UAY8] (stating medical professionals and organizations who provide this care "in the service of a warped ideology will be held accountable by this Department of Justice").

This risk of subsequent non-consensual disclosure of medical information for law enforcement purposes would violate CNH patients' informational privacy rights. *See Ferguson*, 532 U.S. at 76 (state's obtainment of patients' medical information and transfer to law enforcement without warrant or consent violated Fourth Amendment privacy right); *see also Tucson Woman's Clinic*, 379 F.3d at 551-52 ("Even if a law adequately protects against *public* disclosure of a patient's private information, it may still violate informational privacy rights if an unbounded, large number of government employees have access to the information.") (citing *Planned Parenthood of S. Ariz. v. Lawall*, 307 F.3d 783, 789-90 (9th Cir. 2002)). As the *Walls* court itself recognized, "we need to be ever diligent to guard against misuse. Some information still needs to be private, disclosed to the public only if the person voluntarily chooses to disclose it." 895 F.2d at 194-95. The identifying information sought by the Patient Data Requests falls into that bucket.

DOJ has proposed in related litigation that providers can simply redact confidential patient information, *see In re: 2025 UPMC Subpoena*, 2025 WL 3724705, at *1 (granting relief to plaintiffs despite "the government's concession that it will accept 'anonymized' medical records"), but—as the district court recognized—redaction would not cure the constitutional defects of the subpoenas. *See In re Children's Nat'l Hosp.*, 2026 WL 160792, at *9 ("The Subpoena lacks a legitimate purpose. That cannot be ameliorated by providing

23

patient records in redacted form."). Moreover, "[e]ven if there were no possibility that a patient's identity might be learned from a redacted medical record, there would be an invasion of privacy" given "[t]he revelation of the intimate details contained" in these medical records—here, the extent of one's gender dysphoria, dosage levels and adjustments, side effects, and mental health details. *Ashcroft*, 362 F.3d at 929 (affirming quash of subpoena seeking redacted medical records because redaction could not eliminate realistic risks and resulting harms of reidentification). Courts regularly shield even redacted medical records from disclosure precisely because these details are still deeply personal even when not tied to particular names. *See, e.g.*, *Planned Parenthood v. Ashcroft*, No. C03-4872, 2004 WL 432222, at 2* (N.D. Cal. March 5, 2004) (rejecting disclosure of medical records to government even with "redaction of . . . objectively identifying information" because they "nevertheless contain other . . . information of an extremely personal and intimate nature"). The Government's overt hostility toward transgender health care, including now criminal proceedings against providers, *see infra* Section II.C, magnifies the risks of reidentification and erodes patient trust in the healthcare system—risks that redaction fails to cure. *Ashcroft*, 362 F.3d at 928-29 ("The natural sensitivity that people feel about the disclosure of their medical records . . . is amplified when the records are of a procedure that [the Government] has now declared to be a crime.").

**C. Patients' Constitutionally Protected Privacy Interests Have Protected Against Disclosure of Identifying Information to DOJ in the Context of Grand Jury Subpoenas.**

Two district courts have recently held that patients' constitutional privacy interests under the Fourth and Fifth Amendments are sufficient to prevent DOJ from receiving patient-identifying information through grand jury subpoenas. By way of background, DOJ has recently escalated its campaign against healthcare institutions that provide gender-affirming care for youth beyond administrative subpoenas by issuing grand jury subpoenas, which carry potential criminal consequences. These grand jury subpoenas seek the same expansive, identifying, and sensitive information as the administrative subpoena at issue here. Since grand jury subpoenas are issued under closed-door proceedings, the exact list of institutions is not public, but hospitals affiliated with New York University and Stanford University have acknowledged receipt of grand jury subpoenas. There are now two class action cases against DOJ asserting the constitutional privacy interests of patients, and courts have ruled in patients' favor in each one. *See* Prelim. Inj. Order and Extension of Provisional Class Certification, *Coe By & Through Coe v. Blanche*, No. 26 Civ. 4641, 2026 WL 1951390 (S.D.N.Y. July 6, 2026); *Z.A. v. Blanche*, No. 26-cv-04998, 2026 WL 1907181 (N.D. Cal. July 2, 2026) (applying *Tucson Woman's Clinic* factors throughout).

In issuing first a temporary restraining order and then a preliminary injunction against DOJ in the *Coe v. Blanche* case, the Southern District of New York was emphatic that the patients' privacy interests outweighed the government's purported interests. *See Coe By & Through Coe v. Blanche*, No. 26 Civ. 4641, 2026 WL 1815507, at *1 (S.D.N.Y. June 24, 2026) (holding plaintiffs "are substantially likely to prevail on their claims that DOJ Defendants' actions demanding identifying and sensitive health information . . . run afoul of constitutional protections for their informational privacy"); Transcript of Teleconference Decision at 4:14-16, *Coe et al. v. Blanche*, No. 26 Civ. 4641 (S.D.N.Y. June 24, 2026)[7] ("That information comprises both their identities as transgender persons, and the very detailed sensitive records of the gender-affirming care that they have received."). It based its decision on "two distinct informational privacy rights: First, medical information; and second, information relating to one's transgender status," since "the scope of information sought . . . places the information among the most personal and sensitive a medical provider can hold and squarely within the class of intimate material, warranting the strongest constitutional protection." *Id.* at 19:13-15, 20:24-25, 21:3-6; *see also id.* at 21:9-10 ("[E]ven the provision of anonymized data would lead to the same result."). Because the court could "not conceive of a crime that would require the breadth of

_____

[7] *See* Statement of Recent Decision, *Z.A. et al. v. Blanche*, No. 5:26-cv-04998 at 4-38, ECF No. 89 (N.D. Cal. June 26, 2026) (attaching full transcript as Exhibit A).

disclosure sought in the subpoena, identifying and sensitive medical information for an entire class of people for a six-year period," it found "that the government's interest does not outweigh the plaintiffs' interest in privacy." *Id.* at 22:12-17; *see also id.* at 22:17-20 ("[E]ven were the government to articulate a cognizable and legitimate interest in the information it seeks, it would not overcome plaintiffs' strong privacy interest.").

In *Z.A. v. Blanche*, the Northern District of California also emphasized the critical nature of these patients' privacy interests in preliminarily enjoining DOJ from obtaining any patient-identifying information through the grand jury subpoena sent to the Stanford hospital. In finding plaintiffs were likely to succeed on their informational privacy claim, the court stressed that "the information at issue here is highly sensitive," since it "includes detailed and identifying medical records" and "identifies provisional class members as having received care that is subject to intense political controversy, that the federal government has professed a desire to 'end,' and that state authorities in Texas have suggested could form the basis for child-abuse prosecutions against patients' parents." *Z.A.*, 2026 WL 1907181, at *18; *see also id.* at *20 ("[T]he disclosure of children's private health information to officials who expressly intend to deprive them of medical care that their families, doctors, and the California legislature deem necessary and appropriate is an obvious harm."). The court also found it "difficult to conceive of a potential criminal offense

27

for which an investigation 'would require identifying and sensitive medical information for an entire class of people for a six-year period,'" especially since "that information has no discernible relevance to any federal healthcare offense or other fraudulent billing or insurance-claim practices." *Id.* at \*21-22 (internal citation omitted). So too here.

## CONCLUSION

*Amici* respectfully urge this Court to affirm the district court's order quashing DOJ's administrative subpoena in its entirety based on improper purpose.


Dated: July 14, 2026

Respectfully submitted,

 */s/ Deborah A. Jeon*

Deborah A. Jeon
 *Counsel of Record*
Gina B. Elleby
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF MARYLAND
3600 Clipper Mill Road, Suite 200
Baltimore, MD 21211
(410) 889-8555
jeon@aclu-md.org
elleby@aclu-md.org

Alexandra R. Johnson
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street, 18th Fl.
New York, NY 10004
(212) 549-2500
a.johnson@aclu.org

28

Elizabeth O. Gill
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
425 California Street, Suite 700
San Francisco, CA 94104
(415) 343-0779
egill@aclu.org

Jean Strout
NATIONAL CENTER FOR YOUTH
LAW
428 13th Street, FL 5
Oakland, CA 94612
(510) 835-8098
jstrout@youthlaw.org

Hannah Benton Eidsath
Nina Monfredo
NATIONAL CENTER FOR YOUTH
LAW
2300 18th St NW, P.O. Box 21156
Washington, D.C. 20009
(202) 868-4781
hbenton@youthlaw.org
nmonfredo@youthlaw.org

*Attorneys for Amici Curiae*

29

# <u>CERTIFICATE OF COMPLIANCE</u>

1.    This brief complies with type-volume limits in Rules 29(a)(5) and 32(a) of the Federal Rules of Appellate Procedure, and because, excluding the parts of the brief exempted by Rule 32(f), it contains 6,493 words.

2.    This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman.


July 14, 2026                                  /s/ Deborah A. Jeon
                                               *Attorney for Amici Curiae*

**CERTIFICATE OF SERVICE**

I certify that on July 14, 2026, I caused a true and accurate copy of the foregoing document to be electronically filed with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit through the CM/ECF system.

I further certify that the participants in this case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ Deborah A. Jeon
*Attorney for Amici Curiae*