**No. 26-1104**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

PARENT AA, et al.,

Plaintiffs-Appellees,

v.

UNITED STATES DEPARTMENT OF JUSTICE,

Respondent-Appellant.

On Appeal from the United States District Court
for the District of Maryland

### REPLY BRIEF

BRETT A. SHUMATE
  *Assistant Attorney General*

BRAD HINSHELWOOD
SARAH WELCH
  *Attorneys, Civil Division*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  (202) 514-3180

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................. 1

ARGUMENT.................................................................................................... 1

I.    Plaintiffs lack statutory authorization to challenge a subpoena
      they did not receive. ............................................................................. 1

II.   The Children's National subpoena is valid and was validly
      issued. ....................................................................................................6

III.  The district court erred in quashing the subpoena based on its
      evaluation of the Department's purpose............................................ 14

IV.   Plaintiffs' privacy-based arguments do not present an
      alternative basis for affirmance. ....................................................... 16

CONCLUSION............................................................................................... 27

CERTIFICATE OF COMPLIANCE............................................................28

CERTIFICATE OF SERVICE.....................................................................29

# TABLE OF AUTHORITIES

## Cases

*Alexander v. Sandoval,*
532 U.S. 275 (2001)..................................................................2

*Big Ridge, Inc. v. Fed. Mine Safety & Health Rev. Comm'n,*
715 F.3d 631 (7th Cir. 2013) ....................................................18

*City of Dallas v. Stanglin,*
490 U.S. 19 (1989)...................................................................26

*Dobbs v. Jackson Women's Health Org.,*
597 U.S. 215 (2022)..................................................................21

*Doe v. Broderick,*
225 F.3d 440 (4th Cir. 2000)....................................................20

*EEOC v. Lockheed Martin Corp.,*
116 F.3d 110 (4th Cir. 1997).......................................................8

*EEOC v. Maryland Cup Corp.,*
785 F.2d 471 (4th Cir. 1986).......................................................8

*EEOC v. Trs. of Univ. of Penn.,*
827 F. Supp. 3d 554 (E.D. Pa. 2026)........................................23

*Fraternal Order of Police, Lodge No. 5 v. Philadelphia,*
812 F.2d 105 (3d Cir. 1987) .....................................................23

*Hale v. Henkel,*
201 U.S. 43 (1906)...................................................................20

*Helsabeck v. Fabyanic,*
173 F. App'x 251 (4th Cir. 2006) .............................................24

*IDK, Inc. v. Clark Cnty.,*
836 F.2d 1185 (9th Cir. 1988) .................................................26

*In re Subpoena Duces Tecum,*
228 F.3d 341 (4th Cir. 2000) .......................................... *passim*

*In re Subpoenas Duces Tecum Nos. A99-0001, A99-0002, A99-0003 and A99-0004,*
　51 F. Supp. 2d 726 (W.D. Va. 1999) ........................................................20

*Laird v. Tatum,*
　408 U.S. 1 (1972) ................................................................................ 25, 26

*Mares v. ConAgra Poultry Co.,*
　971 F.2d 492 (10th Cir. 1992) .................................................................24

*Nw. Mem. Hosp. v. Ashcroft,*
　362 F.3d 923 (7th Cir. 2004) ..................................................................25

*Okla. Press Pub. Co. v. Walling,*
　327 U.S. 186 (1946) .................................................................................11

*Paul P. v. Farmer,*
　92 F. Supp. 2d 410 (D.N.J. 2000) .....................................................23, 24

*Samia v. United States,*
　599 U.S. 635 (2023) ...............................................................................26

*Smith v. Maryland,*
　442 U.S. 735 (1979) ...............................................................................20

*Solis v. Food Emps. Lab. Rels. Ass'n,*
　644 F.3d 221 (4th Cir. 2011)......................................................................6

*United States v. Am. Target Advert.,*
　257 F.3d 348 (4th Cir. 2001)......................................................................8

*United States v. Arbaugh,*
　951 F.3d 167 (4th Cir. 2020) ..................................................................25

*United States v. Beaufils,*
　160 F.4th 1147 (11th Cir. 2025) ............................................................. 18

*United States v. Hayes,*
　794 F.2d 1348 (9th Cir. 1986) ............................................................... 18

*United States v. Oladipo,*
　2023 WL 4552112 (D. Mass. July 14, 2023)............................................17

ii

*United States v. Pompy,*
  2021 WL 978797 (E.D. Mich. Mar. 16, 2021) ........................................... 18

*United States v. Skrmetti,*
  605 U.S. 495 (2025) ...................................................................................15

*United States v. Westinghouse Elec. Corp.,*
  638 F.2d 570 (3d Cir. 1980) ................................................................20, 24

*Washington v. Glucksberg,*
  521 U.S. 702 (1997) ................................................................................. 21

*Whalen v. Roe,*
  429 U.S. 589, (1977) ...........................................................................22, 24

**Statutes**

5 U.S.C. § 552a.............................................................................................23

5 U.S.C. § 552a(i).........................................................................................23

18 U.S.C. § 1032.......................................................................................... 18

18 U.S.C. § 1082A ....................................................................................... 18

18 U.S.C. § 1347 .......................................................................................... 18

18 U.S.C. § 3486(a)(5) ........................................................................... 2, 4, 5

18 U.S.C. § 3486(c)......................................................................................... 5

18 U.S.C. § 3486(e)...................................................................................... 22

18 U.S.C. § 3486(e)(1) ...................................................................... 2, 23, 26

21 U.S.C. § 841............................................................................................. 18

26 U.S.C. § 7609 ............................................................................................ 3

**Regulations**

45 C.F.R. § 164.520 ...................................................................................... 22

## INTRODUCTION

Below, the district court based its decision on the conclusion that the Department issued a HIPAA subpoena to Children's National Hospital with an improper purpose. On appeal, Plaintiffs scarcely try to defend that conclusion. Sensibly enough: The district court reached that conclusion only by ignoring the Department's explanation of the nature of the ongoing investigation and the subpoena's relevance to it, and its reasoning is indefensible.

Pivoting, Plaintiffs instead attempt to pre-litigate the scope of potential liability under the FDCA (despite courts' emphatic rejection of attempts to do just that in summary proceedings on administrative subpoenas) and to forward a substantive due process claim as an independent basis for the decision (despite the district court's recognition that the claim's hope of success rose and fell with the improper-purpose claim). The district court's reasoning fails, and Plaintiffs' efforts to reframe it do no better. The Court should reverse.

## ARGUMENT

### I.    Plaintiffs lack statutory authorization to challenge a subpoena they did not receive.

At the outset, the district court erred in granting Plaintiffs' motion to quash a subpoena issued to a third party. Plaintiffs identify no statutory

vehicle for their challenge other than § 3486, but that statute permits subpoena challenges only by "the person or entity summoned." 18 U.S.C. § 3486(a)(5). Other provisions in § 3486, including the timing requirement, venue requirement, and provision for orders forbidding disclosure of a HIPAA subpoena to any third party, confirm that only a subpoena recipient can challenge a subpoena. *See id.* § 3486(a)(5), (e)(1); Opening Br. 27-32.

Plaintiffs do not engage with those arguments. Instead, their closest approach to a statutory argument is that it would be "absurd" if § 3486 did not permit them to challenge a subpoena issued to a third party. Resp. Br. 19. That is not the law. Congress created HIPAA subpoenas and can set the terms for challenges to those subpoenas. Indeed, it is not uncommon for Congress to limit the availability of a private right of action or decline to create a private right of action at all. *See, e.g.*, *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001). In those circumstances, "courts may not create" a right to sue that Congress has declined to create, "no matter how desirable that might be as a policy matter." *Id.* at 286-87.

Plaintiffs similarly argue that § 3486 does not "eliminate[]" their right to seek relief. Resp. Br. 19. But again, that frames the issue precisely backwards. There is no background rule that any plaintiff may challenge any action unless expressly barred. *See Alexander*, 532 U.S. at 285-93. That

2

principle likewise disposes of Plaintiffs' appeal to jurisdiction-stripping cases, which do not speak to whether Congress has provided a right to sue to any particular person. *See* Resp. Br. 22. Likewise, the remaining cases Plaintiffs cite address subpoenas issued under court rules, so they do not speak to Congress's power to establish the conditions for challenging subpoenas that are creates of statute, like HIPAA subpoenas. *Id.* at 21 n.5. And Plaintiffs have no response to the examples demonstrating that where Congress has created an administrative subpoena scheme in which issuance of a subpoena is not an exercise of a court's process, Congress is perfectly capable of providing for motions to quash by interested third parties where it believes such actions are appropriate. *E.g.*, 26 U.S.C. § 7609 (providing for third-party motions to quash administrative subpoenas issued in tax investigations).

Plaintiffs otherwise appear to misapprehend the Department's arguments about how to read the scope of § 3486's provisions regarding motions to quash. *See* Resp. Br. 22-23. The Department referenced the statute's venue and timeliness provisions to explain why § 3486 is best read to permit quashal actions only by subpoena recipients. Opening Br. 30-32. Plaintiffs' response just underscores the textual contortions that would be required to read the statute to permit challenges by non-recipients of

3

HIPAA subpoenas. They say (without a hint of textual justification) that the timing requirement applies only to challenges by subpoena recipients, since non-recipients may not learn of a subpoena prior to the statutory deadline. Resp. Br. 22-23. But as the Department has explained, the prospect that the statute's time limit will expire before a non-recipient learns of the subpoena *supports* the conclusion that the statute does not permit challenges by non-recipients. Opening Br. 30-31. A reading of the statute that requires ignoring the timeliness requirement has little to recommend it—not least because it would paradoxically favor challenges by non-recipients (who can move to quash at any time, on Plaintiffs' view) over challenges by recipients themselves (who must move to quash before the return date, 18 U.S.C. § 3486(a)(5)).

Plaintiffs similarly contort the statute's venue provision for motions to quash, which provides for venue in the district in which the subpoena recipient "does business or resides." 18 U.S.C. § 3486(a)(5). As the Department explained, that makes good sense if the subpoena recipient is the only person or entity challenging a subpoena—but it makes little sense if all interested third parties must determine whether the subpoena recipient does business or resides and challenge the subpoena there.

Plaintiffs do not disagree, observing only that they sued in the venue where the subpoena recipient does business. Resp. Br. 23.[1]

Instead of identifying any text in § 3486 or elsewhere as the basis for their challenge, Plaintiffs say they have *Article III standing* to challenge the subpoena. Resp. Br. 15-18. That is no response to Plaintiffs' lack of a statutory vehicle for suit: Article III standing is necessary but not sufficient to obtain relief from a federal court.

To the extent Plaintiffs fall back on the Federal Rules of Civil Procedure, *see* Resp. Br. 20, that is unavailing. Plaintiffs attempt no response at all to the Department's explanation of why Rules 45 and 81 do not permit challenges by non-recipients and no defense of the district court's reasoning on this front. Opening Br. 32-34.

In sum, Plaintiffs lack a vehicle to move to quash a HIPAA subpoena they did not receive. Section 3486 is no help to them, and they identify no other enactment as permitting their challenge to proceed. The Court need not reach the merits at all.

---

[1] Plaintiffs' reference to the Department's action to enforce a different HIPAA subpoena in the Northern District of Texas is irrelevant on this point. *See* Resp. Br. 23 n.7. Section 3486 has different venue provisions for motions to *quash* (permitted in the district in which the subpoena recipient "does business or resides," § 3486(a)(5)) and motions to *enforce* (permitted in "any court of the United States within the jurisdiction of which the investigation is carried on," among other permissible venues, § 3486(c)).

## II.    The Children's National subpoena is valid and was validly issued.

The standard governing whether an administrative subpoena is enforceable is whether "(1) the agency is authorized to make such an investigation; (2) the agency has complied with statutory requirements of due process; and (3) the materials requested are relevant." *Solis v. Food Emps. Lab. Rels. Ass'n*, 644 F.3d 221, 226 (4th Cir. 2011). Plaintiffs do not dispute that the Department is authorized to investigate potential FDCA violations, or that the Department is genuinely investigating potential violations of federal healthcare laws in this space—nor could they, when the Department's investigation has resulted in resolutions of potential liability with two hospitals thus far.[2] *E.g.*, Resp. Br. 61 ("The court left DOJ free to pursue its FDCA investigation through the unchallenged requests."). Plaintiffs likewise acknowledge that the subpoena's other requests are relevant to the Department's FDCA investigation, at least insofar as it relates to potential misbranding violations of the FDCA via off-label promotion. Resp. Br. 37-38. Nor do Plaintiffs question the subpoena's compliance with HIPAA's procedural requirements. *See* Opening Br. 40.

---

[2] Press Release, U.S. Dep't of Justice (June 5, 2026), https://perma.cc/3BBY-Q866; Press Release, U.S. Dep't of Justice (May 15, 2026), https://perma.cc/CR9Z-D3QE.

6

Despite acknowledging the Department's authority to conduct its investigation and agreeing that the subpoena largely seeks information relevant to that investigation, Plaintiffs nevertheless argue that the specific requests challenged are not relevant to an authorized investigation. But Plaintiffs' efforts to detach specific aspects of the subpoena from the broader—and concededly authorized—FDCA investigation at issue depend on distorting the relevant legal standards and misapprehending the Department's explanations for its pursuit of the requested information.

Begin with Plaintiffs' efforts to reframe the relevance inquiry in the context of an administrative subpoena. As we explained (Opening Br. 36-37), relevance is construed broadly in this context, and it is determined by reference to the investigation itself rather than any ultimate evidentiary relevance of the requested information. Plaintiffs candidly admit that "courts take a broad view of relevance" in reviewing administrative subpoenas, Resp. Br. 26, but they nonetheless attempt to reshape the relevance standard in two ways.

For one, Plaintiffs try to change the touchstone of the relevance inquiry, arguing that "relevance must be tethered to the statutory charge that supplies authority" to issue an administrative subpoena—that is, that a subpoena can only seek evidence that goes to "the elements" of an FDCA

7

violation. Resp. Br. 26, 32. But this Court has already rejected that premise, explaining that courts "determine relevancy in terms of the investigation rather than in terms of evidentiary relevance," such that information that simply allows an agency "to better focus its investigation" is relevant. *EEOC v. Lockheed Martin Corp.*, 116 F.3d 110, 113-14 (4th Cir. 1997); *EEOC v. Maryland Cup Corp.*, 785 F.2d 471, 475 (4th Cir. 1986) (inquiring whether "the information sought is relevant and material *to the investigation*") (emphasis added).

Plaintiffs cite no case demanding that every investigative request be linked to a specific element of a potential offense. Nor would such a requirement make sense in light of the well-settled principle that parties cannot use subpoena proceedings to test the legal theories on which an agency might pursue a future enforcement action. *See, e.g., United States v. Am. Target Advert.*, 257 F.3d 348, 353 (4th Cir. 2001). Plaintiffs cannot manufacture such challenges through the back door by insisting that an agency articulate a linkage between every aspect of every request and a specific element of a potential offense. Moreover, investigative requests can be used for a variety of purposes, including identifying potential witnesses, victims, or other sources of information. After all, the entire purpose of an

8

investigation is to ascertain whether statutes may have been violated, and agencies need not prove a violation of a particular law before investigating.

Plaintiffs likewise offer no authority supporting their assertion that the relevance showing is more taxing "[w]hen a subpoena request implicates constitutionally protected privacy interests." Resp. Br. 29. The numerous cases establishing the low bar for relevance do not suggest that the standard depends on the kind of information sought. *See* Opening Br. 36-37 (collecting cases). Indeed, this Court's decision in *In re Subpoena Duces Tecum* applied ordinary relevance standards to a HIPAA subpoena that sought patient records, notwithstanding the recipient's argument that the patients' "privacy interests in their medical files" should preclude disclosure.  228 F.3d 341, 350-51 (4th Cir. 2000).

Even aside from Plaintiffs' misapprehension of the relevance standard, they largely do not engage with the Department's explanation of why the requested documents are relevant to an FDCA investigation. As the Department explained, patient records will shed light on its misbranding investigation in multiple respects. Opening Br. 38-39.

Patient records will reveal the scope of potential misbranding by showing which prescriptions were for on-label and off-label uses. Patient records may reveal patterns suggestive of off-label promotion, such as a

9

shift in off-label prescriptions toward a particular company's drug following a meeting with a pharmaceutical company representative. Patient records are also relevant to evaluating fraudulent intent. For example, a shift in diagnostic or billing codes across multiple patients following a meeting with a pharmaceutical company representative could suggest an intent to cover up the off-label promotion. Patient records are also highly relevant to establishing any adverse health outcomes, which are commonly relevant in these cases. *See* Opening Br. 9-11, 38-39. That explanation—fully keyed to misbranding—rebuts Plaintiffs' claim that the Department is merely focused on false billing for its own sake. *See* Resp. Br. 34-36.

Plaintiffs nowhere directly engage with the Department's explanation of the relevance of the requested information. They instead devote much of their brief to attacking straw men, arguing at length that the FDCA does not prohibit "mere off-label use" of prescription drugs. Resp. Br. 30; *see* Resp. Br. 29-37. The Department has never disputed that premise, and does not contend that the FDCA prohibits merely writing a prescription for off-label use. Nor does the subpoena depend on any such theory. However, as the Department's opening brief explained at length and Plaintiffs do not dispute, the FDCA does prohibit distributing or causing the distribution of misbranded drugs, such as drugs that are intentionally promoted for uses

10

the FDA has not approved. *See* Opening Br. 6-10, 18, 25-26. And for the reasons already explained—and that Plaintiffs nowhere address—the requested information is relevant to the Department's investigation of those potential offenses.

Plaintiffs likewise parrot the district court's errors in asserting (Resp. Br. 27-29, 36) that the Department has not supplied evidence that Children's National has violated or conspired to violate the FDCA. As we explained (Opening Br. 42-43, 46-47), the district court simply ignored both the evidence the Department did supply and the Department's explanation that Children's National might be a witness to third parties' violations of the FDCA, and Plaintiffs likewise do not engage with those points.[3] And here, too, Plaintiffs' argument proceeds from the mistaken premise that an agency is required to provide evidence of wrongdoing before issuing an administrative subpoena. An agency issues a subpoena "to discover and procure evidence," *Okla. Press Pub. Co. v. Walling*, 327 U.S. 186, 201 (1946), as an early investigative step that may form the basis for other investigatory steps that *do* require a showing of probable cause. *See In re Subpoena*, 228 F.3d at 348; Opening Br. 44. An investigation is not

---

[3] Plaintiffs' unexplained reference to forfeiture, Resp. Br. 37 n.10, is meritless, as the Department advanced these points in district court. Opening Br. 42 (collecting record citations).

"speculation," Resp. Br. 36, merely because it seeks information the agency does not already have. Gathering information is, after all, the entire purpose of an investigation.

Plaintiffs argue for similar reasons that the subpoena is overbroad because its "breadth is disproportionate to" a legitimate inquiry. Resp. Br. 41. That argument depends on Plaintiffs' persistent misapprehension of the requests' relevance. And Plaintiffs lack any legal authority for the idea that the Department must issue a narrow subpoena even if its investigation is broad. That is because this Court has held the opposite: Even if the requested documents are "numerous," a subpoena is not overbroad if the documents "reasonably relate to and further the government's legitimate inquiry." *In re Subpoena*, 228 F.3d at 350 (discussing a subpoena seeking 15,000 patients' records). The Department need not limit its request to patients treated with a single drug if it is investigating multiple drugs; nor would such a limitation enable the Department to evaluate patterns as it seeks to do. *See supra* pp. 9-10.

Recognizing that success on their relevance, breadth, and burden arguments is impossible under *In re Subpoena*, Plaintiffs attempt to distinguish that decision on three grounds. First, they say the Department supposedly has not "offer[ed] the kind of concrete evidence of a legitimate

12

investigation that justified the subpoenas" in that case. Resp. Br. 39. That argument simply repackages Plaintiffs' refusal to engage with the Department's repeated explanations of the investigation and the relevance of the subpoena's requests.

Second, Plaintiffs rehash their improper-purpose argument, asserting that there is "a backdrop of official hostility toward the care th[e] files reflect" here that was absent in *In re Subpoena*, and that decision's balancing of public and private interests does not control here because "the government's need is unsupported and pretextual." *Id.* at 39-40. But that argument fails for the reasons explained below.

And third, Plaintiffs observe that in *In re Supoena* the government offered a "staged" production schedule, with "particular patient files" to be produced only upon the government's request after other documents were produced. *Id.* at 39. But the physician in that case "specifically rejected this offer" and this Court upheld the subpoena as issued, holding that "if [the physician] had treated 15,000 patients over a period of seven years and all of them were reimbursed on claims he submitted, a suspicion of fraud on these claims would justify a review of" the patient records, billing records, and reimbursement records. *In re Subpoena*, 228 F.3d at 350-51.

13

Last, Plaintiffs claim that "nonrecipient patients" have "no obligation" to attempt to reach an accommodation with the Department in order to assert overbreadth or undue burden. Resp. Br. 40; *see* Opening Br. 48-49. But it would make little sense to adopt that rule, which would leave a non-recipient *more readily* able to press claims about the burdensomeness of production than the subpoena recipient that would actually be performing the production.

All told, Plaintiffs fail to rehabilitate the district court's erroneous assessment of relevance, and the subpoena seeks information relevant to an investigation within the Department's authority that the Department is actively conducting.

## III. The district court erred in quashing the subpoena based on its evaluation of the Department's purpose.

Plaintiffs offer only a scant defense of the district court's conclusion that the Department issued the subpoena with an improper purpose. JA23; *see* Resp. Br. 45-47. They do not dispute that a challenger seeking to quash an administrative subpoena for improper purpose bears a heavy burden, nor do they dispute that a successful challenger must show that the *sole* purpose of the subpoena was improper. *See* Opening Br. 53-55. As the Department has already explained, Plaintiffs cannot carry that heavy burden by arguing that the subpoena is irrelevant to an FDCA investigation

14

(as the district court concluded) or based on public statements expressing policy opposition to gender-related medical interventions for children. Opening Br. 56-60. Whether the President or Executive Branch officials have a policy goal of ending gender-related medical interventions for minors—a goal that the Supreme Court has recognized is rational and legally permissible, *see United States v. Skrmetti*, 605 U.S. 495, 521-24 (2025)—is not relevant to determining whether this investigation itself is lawful.

In response, Plaintiffs resort to the same statements the Department already addressed. *See* Resp. Br. 45; Opening Br. 52-58. They also cite other district courts that have reached mistaken conclusions similar to the district court's and which the Department continues to appeal. Resp. Br. 43-47. But repeating an error does not make it correct, and Plaintiffs do not grapple with the far-reaching consequences of their improper-purpose theory, such as immunizing entire industries or practices from investigation or ordinary compliance with generally applicable laws. Opening Br. 58-59. Adopting their theory would work a sea change, impermissibly interfering with the Executive Branch's prerogative to determine its enforcement priorities, requiring intrusive inquiries into subjective motivations of Executive Branch decisionmakers, and paralyzing the government's ability

15

to protect the public by investigating and prosecuting violations of criminal laws. The Court should emphatically reject Plaintiffs' and the district court's improper-purpose arguments.

## IV.   Plaintiffs' privacy-based arguments do not present an alternative basis for affirmance.

Plaintiffs last urge the Court to affirm the district court based on their asserted informational privacy interests, which they treat as an independent ground.  As discussed (Opening Br. 51), the district court addressed that argument in just three sentences, treating it as flowing from the court's conclusion that the subpoena was issued for an improper purpose. This Court should not affirm on that basis.

**A.**   At the outset, Plaintiffs' informational-privacy argument is not an independent ground at all. Plaintiffs apparently acknowledge that the hospital has disclosed that it will turn over records for law enforcement purposes, and that they understand from that disclosure that their records may be produced in response to  "legally valid process." Resp. Br. 50; *see id.* at 51 (repeating that patients do not expect disclosure of their records "pursuant to a subpoena untethered to any legitimate investigation"). Similarly, Plaintiffs urge that any Fifth Amendment balancing test tips in their favor because the government lacks a legitimate interest in obtaining the records. *Id.* at 59 (regarding factor six, arguing that "DOJ has not

16

shown any need for patients' identities and medical records"); *id.* at 59-60 (regarding factor seven, arguing that enforcing a subpoena that "lacked a legitimate purpose" does not serve the public interest).

If this Court reverses the district court's conclusion that the subpoena lacked a legitimate purpose, then that conclusion would likewise control here. That is clear both from Plaintiffs' own arguments and this Court's precedent, which has already rejected the contention that privacy interests in medical records can overcome the government's "compelling interest in identifying illegal activity and in deterring future misconduct," as such disclosures are "not meaningfully distinguishable from a host of other unpleasant invasions of privacy that are associated with many facets of health care." *In re Subpoena*, 228 F.3d at 351 (quotation omitted). Indeed, within the healthcare context, federal prosecutors regularly obtain medical records, often in very large quantities. *See id.* at 345, 350 (affirming denial of motion to quash subpoena seeking "more than 15,000 patient files" because the files could be relevant to "any of 13 federal statutory offenses, including fraud"); *see also, e.g.*, *United States v. Oladipo*, 2023 WL 4552112 (D. Mass. July 14, 2023) (over 140 patients' records in investigation of health care fraud and controlled substances offenses); *United States v. Pompy*, 2021 WL 978797, at *1 (E.D. Mich. Mar. 16, 2021)

17

("all patient medical records" of "the medical practice of Lesly Pompy," in prosecution for controlled substance distribution, 21 U.S.C. § 841, and health care fraud, 18 U.S.C. § 1347); *United States v. Beaufils*, 160 F.4th 1147, 1154-57, 1161, 1163-66 (11th Cir. 2025) (recounting evidence including pattern observed across nearly a thousand patients' medical records in rejecting insufficient-evidence challenge to conviction for health care fraud, 18 U.S.C. § 1347; false statements related to health care matters, 18 U.S.C. § 1032; and aggravated identity theft, 18 U.S.C. § 1082A); *United States v. Hayes*, 794 F.2d 1348, 1355 (9th Cir. 1986) (investigation involving "over 10,000 patient files"); *cf. Big Ridge, Inc. v. Fed. Mine Safety & Health Rev. Comm'n*, 715 F.3d 631, 636, 639, 644 (7th Cir. 2013) (upholding federal agency's demand to review medical records of all miners, across dozens of mines, to evaluate compliance with reporting requirements).

Moreover, outside the healthcare context, many federal crimes involve prosecutors obtaining and handling far more sensitive information—just consider, for example, the documents and evidence used to prosecute child pornography offenses and crimes related to sexual assault. If the records are sought through legal process because they are material to a genuine law enforcement investigation, holding that they are somehow too sensitive to be produced to and used by law enforcement

18

would imperil the ability of law enforcement personnel to build many other kinds of cases that depend on sensitive personal information. Plaintiffs' asserted "privacy" argument thus rises or falls with their other contentions and cannot provide a basis to quash otherwise valid subpoena requests.

**B.** Regardless, Plaintiffs' privacy-based claim fails on its own terms.

First, as noted, this Court has already rejected the argument that patient privacy interests in medical records outweigh the government's interest in obtaining them via a validly issued administrative subpoena, as "any disclosure of information in the files of [the physician's] patients is not 'meaningfully distinguishable from a host of other unpleasant invasions of privacy that are associated with many facets of health care." *In re Subpoena*, 228 F.3d at 351. And as to balancing, this Court held that the government's "compelling interest in identifying illegal activity and in deterring future misconduct" decisively "outweighs the privacy rights of those whose records were turned over to the government, particularly in light of the limitation placed on uses of subpoenaed information by § 3486." *Id.* That holding squarely controls Plaintiffs' claim that their privacy interests should outweigh the government's interests.

That holding was plainly correct. Plaintiffs present no historical justification for thinking that their medical records, held by a hospital and

19

regularly disclosed by the hospital to third parties, are protected by a right to informational privacy when requested by the government pursuant to an administrative subpoena. Understandably so, as precedent cuts in the opposite direction. The Supreme Court has long permitted subpoenas to businesses for their records. *See, e.g.*, *Smith v. Maryland*, 442 U.S. 735, 743-44 (1979) (customers' telephone records); *Hale v. Henkel*, 201 U.S. 43 (1906) ("books and papers" of corporations). And the authority invoked by Plaintiffs and the district court turned on a statute, not applicable here, that "mak[es] access to [substance abuse treatment] records more difficult for criminal investigation purposes." *Doe v. Broderick*, 225 F.3d 440, 450 (4th Cir. 2000); *see* Resp. Br. 49.

Instead of following circuit precedent, Plaintiffs ask the Court to adopt a seven-factor balancing test used by the Third Circuit. Resp. Br. 53 (citing *United States v. Westinghouse Elec. Corp.*, 638 F.2d 570, 578 (3d Cir. 1980)). But this Court has never adopted that test, even when it has recognized privacy interests at play. Instead, again, it decided a claim like Plaintiffs' without any resort to the test—even though the district court had applied the seven-factor test. *See In re Subpoena*, 228 F.3d at 351; *In re Subpoenas Duces Tecum Nos. A99-0001, A99-0002, A99-0003 and A99-0004*, 51 F. Supp. 2d 726, 738-39 (W.D. Va. 1999).

This Court was right to eschew reliance on the seven-factor test Plaintiffs urge. Plaintiffs offer no justification for that test and no reason to think it accurately reflects the meaning of the Fifth Amendment by properly defining the contours of any right to informational privacy. Nor is it consistent with the Supreme Court's prohibition on framing substantive due process rights "at a high level of generality" and its instruction confining those properly defined rights to those "'deeply rooted in this Nation's history and tradition.'" *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 254-57, 260 (2022) (quoting *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997)). Plaintiffs' seven-factor balancing test lacks historical and traditional roots; nor is it remotely keyed to assessing whether a particular right—such as a claimed right not to have a hospital turn over medical or billing records to the government under the authority of a HIPAA subpoena—has sufficient historical and traditional roots.

Regardless, even if the Court were to apply Plaintiffs' preferred test, their claim would fail. Plaintiffs' analysis of the factors proceeds from the premise that the Department's subpoena is unlawful. But that premise is wrong, and on a proper understanding of the relevant considerations, the balance decisively favors the government. The first two factors (the type of records and information) do not favor Appellees, because medical records

are documents created and held by third parties and regularly disclosed to others, including to the government for law enforcement—as the hospital's privacy disclosure makes clear. Children's Nat'l Hosp., Notice of Privacy Practices, https://perma.cc/9D85-DKAF (notifying patients of 25 categories of disclosures of patients' protected health information, including "[t]o respond to a court order, search warrant, subpoena or summons or similar process"); *see* 45 C.F.R. § 164.520 (requiring such notices). Prosecutions of healthcare crimes frequently depend on review and use of these records, *see supra* pp. 17-18, and "disclosures of private medical information to doctors, to hospital personnel, to insurance companies, and to public health agencies are often an essential part of modern medical practice," *Whalen v. Roe*, 429 U.S. 589, 602, (1977).

The third and fifth factors (potential harm from disclosure and adequacy of safeguards) likewise do not favor Plaintiffs. Section 3486 imposes limits on use of information obtained via HIPAA subpoenas. 18 U.S.C. § 3486(e); *In re Subpoena*, 228 F.3d at 351 (highlighting "the limitation placed on uses of subpoenaed information by § 3486"). Other statutes likewise strictly limit the government's use and disclosure of information, including the Privacy Act, 5 U.S.C. § 552a, and government personnel can face strict penalties for violating those requirements, *see id.*

22

§ 552a(i). Courts applying *Westinghouse* have approved substantially less strict limits on disclosure. *See Paul P. v. Farmer*, 92 F. Supp. 2d 410, 413-14 (D.N.J. 2000) (discussing cases); *Fraternal Order of Police, Lodge No. 5 v. Philadelphia*, 812 F.2d 105, 118 (3d Cir. 1987) ("Safeguards against disclosure of private material have been held to be adequate when there exists a statutory penalty for unauthorized disclosures."); *EEOC v. Trs. of Univ. of Penn.*, 827 F. Supp. 3d 554, 573-74 (E.D. Pa. 2026) (approving of federal government safeguards).

Plaintiffs' arguments on these factors are meritless. Resp. Br. 54-59. The possibility that *a court* will permit other uses of information is no basis to conclude that safeguards are inadequate. Such uses would, after all, require express judicial approval. *See* 18 U.S.C. § 3486(e)(1). And the possibility of information-sharing between law enforcement partners, when expressly permitted by law, is likewise no basis for constitutional concern. Plaintiffs' remaining arguments on these factors would prove too much if accepted: As Plaintiffs admit, any disclosure to the government involves some "inherent" "loss of privacy" in the information disclosed. Resp. Br. 54. Courts have not treated such an "inherent" harm as weighing in the balance—sensibly enough, as this factor would otherwise point in the same direction in every instance. *See, e.g.*, *Westinghouse*, 638 F.2d at 578-80;

23

*Paul P.*, 92 F. Supp. 2d at 413-14; *Mares v. ConAgra Poultry Co.*, 971 F.2d 492, 496 (10th Cir. 1992) ("[A]bsent some allegation (not here present) that information … is being disseminated or published, any invasion is at best insignificant.").

As to the fourth factor (injury to the relationship in which the records were generated), Plaintiffs argue that their medical records are entitled to special privacy protections because they were generated in a confidential relationship with medical providers and that disclosure of the records would imperil that relationship. Resp. Br. 54-55. This argument likewise ignores that the records were generated and maintained subject to the express disclosure that the hospital *would* disclose them to law enforcement if requested. Notice of Privacy Practices, *supra* p. 22; *see In re Subpoena*, 228 F.3d at 351. It also ignores that there is no federal physician-patient privilege, undermining any assertion that the physician-patient relationship would be damaged by disclosure in response to legal process. *See, e.g.*, *Whalen*, 429 U.S. at 601-02 & n.28 (rejecting arguments closely resembling Plaintiffs'); *Helsabeck v. Fabyanic*, 173 F. App'x 251, 257 (4th Cir. 2006).

Plaintiffs' reliance on out-of-circuit authority in *Northwestern Memorial Hospital* does not change that picture. Resp. Br. 55 (citing *Nw.*

24

*Mem. Hosp. v. Ashcroft*, 362 F.3d 923, 929 (7th Cir. 2004)). That decision considered a trial subpoena in a civil case, not a HIPAA subpoena issued as part of a criminal investigation, and the court repeatedly explained that its decision resulted from the fact that the government had produced *no* explanation for how it would use the records it sought at the fast-approaching trial. *See Nw. Mem. Hosp.*, 362 F.3d at 927, 931; *id.* at 928 (observing, in decision issued on March 26, that trial was slated to begin on March 29). That is decidedly different from this subpoena, which is investigative in nature and in which the Department has repeatedly explained the relevance of the information sought to its ongoing investigation.[4]

---

[4] In a footnote, Plaintiffs also advert to "a First Amendment dimension" to their privacy argument. Resp. Br. 55 n.12. Even aside from the fact that this Court does "not ordinarily entertain arguments made solely in a footnote," *United States v. Arbaugh*, 951 F.3d 167, 174 n.2 (4th Cir. 2020), the Supreme Court has made clear that "[a]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm," *Laird v. Tatum*, 408 U.S. 1, 13-14 (1972). A chilling effect arising from an individual's "speculative apprehensiveness that the [government] may at some future date misuse the information in some way that would cause direct harm to respondents" does even not establish standing, let alone a First Amendment claim. *Id.* A subpoena in no way regulates Plaintiffs' speech, and Plaintiffs cannot assert the speech rights of hospitals or doctors. *See id.* at 13 & n.7 ("a litigant has standing to seek redress for injuries done to him, but may not seek redress for injuries done to others"). Plaintiffs' passing allusion to expressive-association cases does them no good, either. The

*Continued on next page.*

Finally, the last two factors (need for access, relevant statutes, and public interest) sharply favor the Department. It is established beyond debate that the government and the public have a "compelling interest in finding, convicting, and punishing those who violate the law." *Samia v. United States*, 599 U.S. 635, 655 (2023) (citation omitted). And Congress has advanced that interest here by mandating disclosure in response to subpoenas in HIPAA, a statute that is undeniably mindful of patient privacy. Congress thus weighed the public interest and policy considerations, expressly acknowledged that HIPAA subpoenas could be used to obtain "[h]ealth information about an individual," 18 U.S.C. § 3486(e)(1), and authorized the Department to issue such subpoenas in order to investigate federal healthcare offenses. Plaintiffs' only contrary argument is a return to their contention that the Department's underlying purpose is improper, which fails for the reasons already explained. Resp. Br. 59 (for factor six, arguing that "DOJ has not shown any need"); *id.* (for factor seven, arguing that the public interest is "not served by enforcing a

---

First Amendment does not constitutionalize ordinary commercial, professional, or service-provider relationships merely because those relationships involve communication. *See City of Dallas v. Stanglin*, 490 U.S. 19, 24-25 (1989); *IDK, Inc. v. Clark Cnty.*, 836 F.2d 1185, 1195 (9th Cir. 1988).

26

subpoena that the district court found lacked a legitimate purpose"); *see*

*supra* Sections II-III.

## CONCLUSION

The Court should reverse.

Respectfully submitted,

BRETT A. SHUMATE
  *Assistant Attorney General*

BRAD HINSHELWOOD
*/s/ Sarah Welch*
SARAH WELCH
  *Attorneys, Civil Division*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-3180*

July 28, 2026

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 5,667 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Georgia 14-point font, a proportionally spaced typeface.

*s/ Sarah Welch*
Sarah Welch

**CERTIFICATE OF SERVICE**

I hereby certify that on July 28, 2026, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit by using the appellate CM/ECF system.

*s/ Sarah Welch*
Sarah Welch

29